COPY

Judge Hellerstein

**07 CV 1248**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

ARMAND RETAMOZZO,

                           Plaintiff

             - against -

THE CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, ASSISTANT DISTRICT ATTORNEY
FREDERICK HARTWELL, in his official and individual
capacity, DETECTIVE JOSE VARGAS, in his official and
individual capacity, DETECTIVE EDWARD GONZALEZ,
in his official and individual capacity, and JOHN DOES 1-10
in their official and individual capacity.

                           Defendants
------------------------------------------------------------------------X

**DOCKET NO.:**



**COMPLAINT**

**_JURY TRIAL DEMANDED_**

     **PLAINTIFF**, ARMAND RETAMOZZO, by and through his attorneys, THE LAW OFFICES

OF FREDERICK K. BREWINGTON, as and for his complaint against the Defendants, respectfully

states and alleges, upon information and belief, as follows:

<u>PRELIMINARY STATEMENT</u>

     1.     This is a civil action for monetary relief, including past economic loss, compensatory

damages, punitive damages, disbursements, costs and fees brought under 42 U.S.C. §1983, grounded

in rights secured by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States

Constitution, and other New York State causes of action. This is an action against THE CITY OF NEW

YORK, NEW YORK CITY POLICE DEPARTMENT, ASSISTANT DISTRICT ATTORNEY

FREDERICK HARTWELL, in his individual and official capacity, DETECTIVE JOSE VARGAS, in

his individual and official capacity, DETECTIVE EDWARD GONZALEZ, in his individual and official

capacity, JOHN DOES 1-10, in their individual and official capacity, for false arrest, false and unlawful

imprisonment, unjust conviction, unjust imprisonment, malicious prosecution, abuse of process,

intentional infliction of emotional harm, violation of civil rights and constitutional rights of ARMAND

RETAMOZZO and failure to provide information, failure to disclose information, infliction of physical

and emotional harm all caused by the negligent hiring and supervision, negligence, recklessness,

intentional and careless action of the CITY OF NEW YORK, its agents and employees, the NEW YORK

CITY POLICE DEPARTMENT, their agents and employees. All acts were committed under color of

law, thus depriving Plaintiff of rights secured by the Constitution and laws of the United States and the

State of New York

2.      Plaintiff, ARMAND RETAMOZZO, was falsely arrested, falsely charged, falsely jailed,

falsely detained, deprived of his freedom, maliciously and falsely accused, abused, subjected to public

ridicule, subjected to violence, subjected to undue pressure, defamed and made to suffer injury to his

body and mind, injury to earning capacity, without reason, legal basis or justification by the CITY OF

NEW YORK, its agent and employees, the NEW YORK CITY POLICE DEPARTMENT, all who knew

or should have known, or became aware that there was not merit to the arrest, jailing, imprisonment,

charging, prosecution, continuation of prosecution, conviction, institution and the continuance of said

actions and that pursuit of same was illegal.

3.      The initial incident of the within matter arose on or about January 8, 2003 at about 4:55

p.m., at the corner of 18 Washington Square North, in New York City and State of New York.

4.      From on or about January 8, 2003 to May 5, 2006, Plaintiff ARMAND RETAMOZZO

was, falsely accused, falsely arrested, falsely held, falsely prosecuted, denied information, denied basic

rights, subjected to wrongful and negligent actions by Defendants subjected to negligent use, holding,

secreting of persons and records including information about witnesses, witness statements, exculpatory

documents and information. He was denied his freedom despite the clear evidence showing that he

should be freed, he was not afforded basic civil and constitutional protections, was not afforded

2

reasonable bail, was falsely charged, was falsely and abusively prosecuted with the full complicity of the CITY OF NEW YORK, Police, Prosecutors and others. He was falsely charged and negligently held in violation of his civil rights by the above mentioned parties.

5.      Plaintiff, ARMAND RETAMOZZO, sustained severe damages, physical and emotional injuries, including, but not limited to, injury to his mental health, his good name, violation of civil rights, permanent damage to his body and his good name and reputation, loss of freedom, property damage, loss of access to personal property, loss of good standing in the community, loss of comfort, loss of employment, loss of income, loss of career opportunities, loss of support, humiliated, shamed, embarrassed, made to lose his freedom, extreme mental and emotional harm and stress, and impairment of earning power and other injuries not yet fully ascertained.

## JURISDICTION

6.  This action is brought pursuant to 42 U.S.C. §1983 and 1988 and the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343(3) and (4) and the aforementioned statutory and constitutional provisions. Plaintiff further invokes the pendent jurisdiction of this Court, pursuant to 28 U.S.C.A. § 1367, to hear and decide any and all claims arising under state law.

7.      Prior hereto and within the proper time allotted by statute Plaintiff filed a Notice of Claim, Claim No.: 2006PI001777, in compliance with General Municipal Law Section 50 et seq. and CPLR 215, as against each municipal Defendant. More than 30 days have elapsed and Defendants have failed and refused to pay or adjust same.

8.      Plaintiff, ARMAND RETAMOZZO, was never requested to present himself to a hearing held by the Defendants pursuant to General Municipal Law §50-h, and therefore, Defendant CITY OF NEW YORK has waived its right to hold such a hearing.

3

9.    That all conditions precedent to instituting the lawsuit have been complied with in a timely manner.

10.    Venue herein is proper under 28 U.S.C. § 1391 (b); the cause of action arose in the Southern District of New York.

## PARTIES

11.    During all times relevant to this Complaint, the Plaintiff ARMAND RETAMOZZO, was and still is a citizen of the United States, residing in the County of Nassau, State of New York.

12.    During all times relevant to this Complaint, the Defendant THE CITY OF NEW YORK (hereinafter "CITY") is a duly constituted municipal corporation of the State of New York and is and was the employer of the named police personnel, and members of the District Attorneys Office.

13.    During all times relevant to this Complaint, the Defendant THE NEW YORK CITY POLICE DEPARTMENT (hereinafter "NYPD") was and is an agency of the CITY, with its headquarters located at 1 Police Plaza, New York, New York.

14.    Upon information and belief, during all times relevant to this Complaint, Defendant ASSISTANT DISTRICT ATTORNEY FREDERICK HARTWELL (hereinafter "HARTWELL") was and is a citizen and resident of the State of New York, and at all times herein mentioned was a Assistant District Attorney employed by the Office of the New York CITY District Attorneys Office, Office of Special Narcotics, with an office at 1 Hogan Place, New York, New York, and is being sued in his official and individual capacities.

15.    Upon information and belief, during all times relevant to this Complaint,  Defendant DETECTIVE JOSE VARGAS (hereinafter "VARGAS") was and is a citizen and resident of the State of New York and at all times herein mentioned  was a Police Officer employed by the CITY, under the direction of Defendants NYPD and CITY,  with an office at 1 Police Plaza, New York, New York, and

4

is being sued in his official and individual capacities. Upon information and belief, VARGAZ was acting in furtherance of the scope of his employment, acting under color or law, to wit under color of statues, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York

16.     Upon information and belief, during all times relevant to this Complaint, Defendant DETECTIVE EDWARD GONZALEZ (hereinafter "GONZALEZ') was and is a citizen and resident of the State of New York, and at all time herein mentioned was a Police Officer employed by the CITY, under the direction of Defendants NYPD and CITY,  with an office at 1 Police Plaza, New York, New York, and is being sued in his official and individual capacities. Upon information and belief, GONZALEZ was acting in furtherance of the scope of his employment, acting under color or law, to wit under color of statues, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York.

17.     Upon information and belief, during all times relevant to this Complaint, Defendants JOHN DOES 1-10 (hereinafter "JOHN DOES') was/were citizen(s) and resident(s) of the State of New York, and at all time herein mentioned was a Police Officer employed by the CITY, under the direction of Defendants NYPD and CITY,  with an office at 1 Police Plaza, New York, New York, and is being sued in his official and individual capacities. Upon information and belief, JOHN DOES was/were acting in furtherance of the scope of his/her employment, acting under color or law, to wit under color of statues, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York.

18.     During all times relevant to this Complaint the Defendants, and each of them, were acting under color of law, to wit, under color of constitution, statutes, ordinances, laws, rules, regulations, policies, customs and usages of the State of New York and/or the City of New York.

19.     During all times relevant to this Complaint the Defendants, and each of them, separately and in concert, engaged in acts or omissions which constituted deprivation of the constitutional rights, privileges and immunities of the Plaintiff, and while these acts were carried out under color of law, they had no justification or excuse in law and were instead gratuitous, illegal, improper and unrelated to any activity in which law enforcement officers may appropriately and legally engage in the course of protecting persons and property or ensuring civil order.

20.     During all times relevant to this Complaint, the Defendants, and each of them, had the power and the duty to restrain the other Defendants and prevent them from violating the law and the rights of the Plaintiff, but each of the Defendants failed and refused to perform that duty, failed and refused to restrain the other Defendants and thereby became a party to the unnecessary subjection of harm and denial of basic rights of the Plaintiffs.

## FACTUAL ALLEGATIONS

21.     Plaintiff, ARMAND RETAMOZZO, reiterates and realleges each and every allegation contained in paragraphs 1 through 20 of this Complaint with the same force and effect as though set forth herein.

22.     On or about January 8, 2003, Plaintiff, together with Bryant Shavuo,  was arrested and charged under Docket No.: 2003NY002174, with violating Penal Law §220.18(6) Criminal Possession of a Controlled Substance in the second degree, a Class A-II felony; and violating Penal Law §220.16(1) Criminal Possession of a Controlled Substance in the third degree, a Class B felony. A conviction under Penal Law §220.18(6) carries with it a potential penalty of three (3) years to life imprisonment. Bail was set at $25,000.00

23.     Plaintiff remained in jail until January 21, 2003, at which time his father posted his bail.

24.     On or about March 19, 2003, Assistant District Attorney Jessica Medoff superseded the

6

accusatory instrument, and included the charge of violating Penal Law §220.50 Criminally Using Drug

Paraphernalia in the second degree, an A misdemeanor.

25.     Through all these proceedings, Plaintiff never waivered in declaring his innocence and

made that fact known to Defendants.

26.     On or about March 20, 2003, the Grand Jury rendered a True Bill finding, voting to indict

Plaintiff with Criminal Possession of a Controlled Substance in the second, Criminal Possession of a

Controlled Substance in the third degree, and Criminally Using Drug Paraphernalia in the second degree.

27.     On or about March 10, 2004, after a jury trial Plaintiff was convicted of the indicted

charges of Criminal Possession of a Controlled Substance in the second and third degree, and acquitted

of the indicted charge of Criminally Using Drug Paraphernalia in the second degree.  Mr. Retamozzo

was immediately remanded, and held in the New York House of Detention to await sentencing.

28.     On or about April 12, 2004, Plaintiff was sentenced to a term of three (3) years to life

imprisonment on the charge of Criminal Possession of a Controlled Substance in the second degree, and

a term of one (1) year to (3) three years.  These sentences were to run concurrently.

29.     Plaintiff appealed this conviction, and continued to exert his innocence.

30.     On or about October 18, 2005, the Appellate Division, First Department reversed

Plaintiff's conviction on the law, and as a matter of discretion in the interest of justice, and remanded

the matter for a new trial before another Justice..

31.     On or about November 18, 2005, Plaintiff was released on $10,000.00 bail pursuant to

the Court's Order of reversal.

32.     On January 6, 2006, Plaintiff served a Notice of Claim upon Defendants POLICE and

CITY.  Said Notice was served upon the Comptroller of New York City and Office of the Corporation

Counsel for the City of New York.

33.     On or about May 5, 2006, Plaintiff was retried on the above remaining criminal charges, and acquitted by a jury.

34.     On or about August 2, 2006, Plaintiff served a Supplemental Notice of Claim adding Defendants DISTRICT ATTORNEY, VARGAS and GONZALEZ.  Said Notice was served upon the POLICE, Office of the Comptroller of New York City and Office of the Corporation Counsel for the City of New York, under Claim No.: 2006PI001777.

**THE ARREST**

35.     At the time of his arrest, Plaintiff, ARMAND RETAMOZZO, was a student at Nassau Community College, majoring in Legal Studies. Also in attendance at Nassau Community College was Bryant Shavuo, a/k/a Debo.  Both were acquaintances as they attended classes at the same time, played pool in the college recreation room, and because both had similar class schedules, Plaintiff often gave Mr. Shavuo rides.  Mr. Retamozzo drove a 2003 Nissan Maxima GLE owned by his father.

36.     On the afternoon of January 8, 2003, Plaintiff traveled with Mr. Shavuo, to Washington Square Park in New York City. The previous day Mr. Shavuo asked that Mr. Retamozzo drive him from Long Island to Manhattan, and agreed to pay Mr. Retamozzo $75.00 for his costs.

37.     On January 8, 2003, upon entering the car, Mr. Shavuo had a red tool box and backpack with him.  Plaintiff was not aware of what was in the box, nor did he inquire.

38.     Upon arrival at the north side of  Washington Square Park, Mr. Shavuo exited the car and requested that Plaintiff wait for him.  Mr. Retamozzo did not see the direction in which Mr. Shavuo went, nor did he know what he intended to do.

39.     Moments after Mr. Shavuo departed, an individual (white male) opened the passenger's door on Plaintiff's car. Mr. Retamozzo met this individual previously at a night club - the Sound Factory - in Manhattan.  At that time, Mr. Retamozzo saw this individual in the company of Mr. Shavuo. Mr.

Retamozzo would later learn that this individual was a confidential informant (CI), working for the Defendants NYPD.

40.     The CI inquired of Plaintiff where Mr. Shavuo went. Plaintiff responded that "he just left." The CI then inquired of Plaintiff if he had any drugs on him. Surprised, Mr. Retamozzo responded "No. I don't know what you are talking about." The CI then offered to sell drugs to Mr. Retamozzo. Mr. Retamozzo again stated "I don't know what you are talking about."

41.     During the time that he was in the presence of the CI, Plaintiff noticed another man standing approximately 10-15 feet away. This individual appeared to Plaintiff to look like an undercover officer - well built, standing straight. This man appeared to be Hispanic.

42.     At this point, Plaintiff believed that he was being set-up, and that the undercover officer was listening in on their conversation. The CI assured Plaintiff that he was not wired; the CI rolled up his sleeves to show Plaintiff that he was not wired. Plaintiff then saw a marked squad car come by, and saw what he believed to be a flash from a camera.

43.     The CI then left to look for Mr. Shavuo. A few moments later, Plaintiff saw the CI and Mr. Shavuo walking towards his car. Mr. Shavuo opened the car door and stated to Mr. Retamozzo "we're done. Let's go back to Freeport." With that, both Mr. Shavuo and the CI got into Mr. Retamozzo's automobile, and Mr. Shavuo directed him where to go. Approximately two (2) blocks from where they started, the CI received a call on his cellular phone; someone was yelling at him. Upon receiving the phone call, the CI became visibly nervous and stated that he had to go back. Plaintiff took the CI back to Washington Square Park, North. Upon their return to the park, Mr. Shavuo and the CI left the car, and Mr. Shavuo asked Mr. Retamozzo to wait for him.

44.     Several minutes later, an Hispanic man (previously seen with the CI) came to the passenger's side of the automobile and looked through the window and then left.

45.     Immediately thereafter, Plaintiff's car was surrounded by approximately 10-15 police officers; some were in uniform, some in plain clothes. Plaintiff was pulled from the car and handcuffed. The trunk of Plaintiff's car was searched. Although a Lieutenant at the scene stated that he found marijuana in the trunk of the car, no marijuana was found in the automobile.

46.     At the time of his arrest, Plaintiff had $150.00 on his person. There was approximately $1,300.00 in the glove compartment of the automobile; monies which his father intended to use to pay property taxes the following day. Mr. Retamozzo was unaware that his father had money in the glove compartment of the automobile.

47.     Plaintiff and Mr. Shavuo were placed in the squad car by Defendant Gonzalez. At the time of their arrest, Police Officer Dowling told Plaintiff and Mr. Shavuo that everything was being taped, and warned them not to say anything. Mr. Retamozzo and Mr. Shavuo were then taken to the 6th Precinct, and later to Central Booking.

48.     One of the officers drove away in Plaintiff's Nissan Maxima.

49.     On or about January 9, 2003, Plaintiff was arraigned on the charges of Criminal Possession of a Controlled Substance in the second degree and Criminal Possession of a Controlled Substance in the third degree. Bail was set at $25,000.00, and a Grand Jury Notice was filed. Mr. Retamozzo remained incarcerated until January 21, 2003, at which time his father posted his bail.

50.     On or about March 19, 2003, Assistant District Attorney Medoff superseded the accusatory instrument, and included the charge of Criminally Using Drug Paraphernalia in the second degree.

51.     The criminal matter was submitted to the Grand Jury. Although Plaintiff sought to testify before the Grand Jury in his defense, he was denied the opportunity to do so.

52.     On or about March 20, 2003, the Grand Jury rendered a True Bill finding, voting to indict

Plaintiff of the charges of Criminal Possession of a Controlled Substance in the second, Criminal Possession of a Controlled Substance in the third degree, and Criminally Using Drug Paraphernalia in the second degree. Mr. Shavuo was also indicted by the Grand Jury on these charges.

**THE TRIAL**

53.    Trial in the underlying matter commenced on March 8. 2004.

54.    Prior to Plaintiff's trial, on May 27, 2003, Mr. Shavuo accepted the District Attorney's offer, and plead guilty to the charge Criminal Possession of a Controlled Substance in the fifth degree, a class D felony. He was sentenced to two (2) to four (4) years in prison.

55.    At the time of trial, the Defendant HARTWELL failed to provide Plaintiff's counsel with *all Rosario* material, as required by law; in addition, no District Attorney Data Sheet was ever provided to Plaintiff's counsel.

56.    At trial, the Defendant HARTWELL's main witness against Plaintiff was Defendant VARGAS.

57.    At trial and under oath, members of the NYPD, including Defendants VARGAS and GONZALEZ, testified falsely, and fabricated the truth as to what occurred on the afternoon of January 8, 2003 as it pertained to Plaintiff.

58.    Upon information and belief, an under cover officer, that was not present at the scene, testified that he peered into the car and heard a conversation that Plaintiff intended to sell drugs to Defendant VARGAS. At no time had Plaintiff ever spoken to Defendant VARGAS.

59.    Upon information and belief, Defendant VARGAS was in possession of an audio recording device known as a "Kel Transmitter/Receiver". However, no tapes or records were ever produced as evidence. During the trial, two officers testified that the recording devices "Kel Transmitters/Recorders" sometimes don't work.

11

60.     Upon information and belief, Defendant VARGAS testified falsely that negotiations were entered into and then agreed to, for Plaintiff to sell drugs to him for the price of $7,500.00. Defendant VARGAS then falsely testified that he stated to Plaintiff "I don't have the money now, just wait here," that he left, and saw Plaintiff drive away.

61.     Defendant VARGAS also falsely testified the Plaintiff returned, and that he again went over to Plaintiff and stated that he would get the money, and Plaintiff should stay there.

62.     As par ot his false testimony, Defendant VARGAS further testified that Mr. Shavuo got out of the car, and frisked Defendant VARGAS. Although Mr. Shavuo frisked him, he did not detect the audio recorder.

63.     Defendant VARGAS further testified that Mr. Shavuo gestured to him that the drugs were in a white plastic bag hidden in the bushes in the park.

64.     Defendant VARGAS further testified that he returned to the car, and spoke to Plaintiff telling Plaintiff that he was going to get the money, and left. Defendant VARGAS testified that at this point he notified Defendant GONZALEZ, and the arrest team moved in to effect the arrest.

65.     Defendant VARGAS testified that neither Plaintiff or Mr. Shavuo had drugs in their possession.

66.     The evidence presented at trial was manufactured in conflict. Several property vouchers were prepared by Defendants NYPD. Upon information and belief, one voucher indicated that two (2) digital scales were found in the trunk of Plaintiff's car; one voucher indicated that no scales were found in the trunk of Plaintiff's car; and yet another property voucher indicated that one (1) scale was found in the trunk of Plaintiff's car; one (1) scale which was presented at trial *did not operate.*

67.     Defendant GONZALEZ falsely testified at trial that he found two (2) scales in the trunk of Plaintiff's car, even though only one (1) scale was presented into evidence at trial.

68.    Defendant GONZALEZ also testified that he retrieved from Plaintiff's trunk a Cocaine Handbook, and a book entitled *Como-se-dice*. Defendant GONZALEZ, who speaks fluent Spanish, falsely testified that this book was about drugs.

69.    Defendant GONZALEZ testified that neither he, nor the other undercover officeR with him, heard any conversation between Plaintiff and Defendant VARGAZ or Plaintiff and the CI.

70.    As stated previously, Plaintiff was enrolled as a student at Nassau Community College enrolled in Criminal Justice courses, and the books found in the trunk of his car were textbooks which he used in the courses in which he was enrolled. At no time did Plaintiff use these textbooks to learn about preparing illegal substances, as inferred by Defendant GONZALEZ's false testimony.

71.    Plaintiff took the witness stand, and testified in defense of these false charges. Throughout, he maintained his innocence.

72.    However, during Plaintiff's direct testimony, and during cross-examination of the government's witnesses, presiding Judge Edwin Torres questioned Plaintiff, and interjected comments that had the effect of the Judge casting doubt on Plaintiff's credibility on one hand, and assisting the prosecutor's case on the other. Many of Judge Torres' statements were testimonial in nature. Upon information and belief, Judge Torres' questioning and statements made during the trial had the effect of swaying the jury in its determination of Plaintiff's guilt.

73.    As a result of th wrongful actions of the Defendants, Plaintiff was found guilty of Criminal Possession of a Controlled Substance in the second degree, and Criminal Possession of a Controlled Substance in the third degree.

74.    On or about April 12, 2004, Plaintiff was sentenced to a term of three (3) years to life imprisonment. Plaintiff continued to maintain his innocence.

**THE APPEAL**

75.    Plaintiff timely and fully appealed this conviction.

76.    On or about October 18, 2005, the Supreme Court of the State of New York, Appellate Division, First Department, Justice McGuire, reversed Plaintiff's conviction, and remanded the matter for a new trial before a new judge.

77.    The Court held that Plaintiff was denied a fair trial on the drug possession charges due to the trial court's questioning of Plaintiff during his direct testimony, and of government witnesses during cross examination.

78.    In its analysis of the criminal trial, and the trial Judge's numerous interventions and interruptions, the Appellate Court stated that "although [the] instances of judicial intervention during the People's direct case were improper, the trial judge's interventions during the presentation of the defense case were perhaps more egregious" thus leading the jury to doubt the veracity of Plaintiff's testimony. Simply put, Mr. Retamozzo was denied a fair trial.

79.    Plaintiff received a new trial before the Honorable Roger Hayes, in Supreme Court of the State of New York, New York County.

**THE SECOND TRIAL**

80.    Plaintiff was retried on the charges of Criminal Possession of a Controlled Substance in the second and third degrees.

81.    Again, as in the first trial, Defendant VARGAS was offered as Defendant HARTWELL'S most important witness.

82.    During his direct examination, Defendant VARGAS' testimony was similar to that of the first trial. However, on cross-examination, it was revealed that Defendant VARGAS' testimony at the first trial was inconsistent with his testimony at the Grand Jury. It was also revealed that the information contained in the "buy report" which he claimed he prepared as a result of Plaintiff's arrest,

14

and on which he allegedly relied to testify, was also inconsistent with his Grand Jury testimony.

83.    During cross-examination, Defendant VARGAS admitted, among other things, that his sworn testimony during the first trial regarding statements allegedly made by Plaintiff to him, did not occur. For example, Defendant VARGAS testified:

* That his buy report did not contain a statement of Plaintiff allegedly saying "I told you it was 75 hundred dollars, and that he never told the Grand Jury that Plaintiff made this statement to him.

* That his buy report did not contain a statement of Plaintiff allegedly saying "my friend is in the park, is holding it", and that he never told the Grand Jury that Plaintiff made this statement to him

* That his buy report did not contain a statement of Plaintiff allegedly saying "come around to the sidewalk", and that he never told the Grand Jury that Plaintiff made this statement to him

* That Plaintiff never introduced himself to Defendant VARGAS, and that Plaintiff never told him his name, but that Defendant VARGAS testified before the Grand Jury that Plaintiff introduced himself to VARGAS and stated his name

84.    Upon information and belief, Defendants VARGAS' and GONZALEZ' testimonies contained wilful falsehoods and were grossly inconsistent with that given to the Grand Jury, and during the first trial.

85.    On or about May 5, 2006, Plaintiff was found not guilty of the charges of Criminal Possession of a Controlled Substance in the second degree and Criminal Possession of a Controlled Substance in the third degree.

86.    Plaintiff has never waivered in asserting his innocence.

### AS AND FOR COUNT ONE
### 42 U.S.C §1983 - FOURTH, FIFTH, EIGHTH and FOURTEENTH AMENDMENTS

87.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 86 of this Complaint with the same force and effect as though fully set forth herein.

88.    On January 8, 2003 Plaintiff was falsely arrested, falsely seized and falsely detained, deprived of his freedom, unlawfully imprisoned, maliciously prosecuted, and unjustly convicted, by Defendants in violation of the civil and constitutional rights of ARMAND RETAMOZZO. All acts by the Defendants were committed under color of law, thus depriving Plaintiff of rights secured by the Constitution and laws of the United States and the State of New York.

89.    On or about January 8, 2003, Defendants CITY, VARGAS and GONZALEZ, falsely arrested, falsely seized and falsely detained Plaintiff, thus depriving him of his freedom. Said seizure was made without probable cause, as Defendants were of the knowledge that Plaintiff had committed no crime.

90.    Upon information and belief such seizure, arrest, and detention was ordered and directed by Defendants CITY, NYPD, Defendants VARGAS and GONZALEZ.

91.    Upon information and belief, Defendant HARTWELL, possessed, but withheld information which would have exonerated Plaintiff of the criminal charges with which he was charged, in violation of Plaintiff's civil and Constitutional rights under the Federal and State Constitution.

92.    Upon information and belief, the Defendants and each of them took an active role in creating and manufacturing the charges against Plaintiff, solely for the purposes of effecting an arrest and conviction, and not to effectuate justice

93.    As part of the false arrest, detention and accusations, Defendants caused Plaintiff to be wrongfully seized, falsely arrested, tried, wrongfully convicted, falsely imprisoned, and deprived of his liberty, without probable cause and be deprived of his liberty, and was further exposed to disgrace, public humiliation, injury and embarrassment.

94.    The Defendants individually and collectively knew at the time of Plaintiff's arrest and at all times since then that the evidence they had in connection with the charges brought against Plaintiff

were false, inconsistent with and insufficient to establish his guilt and were based solely on their insistence that he was in the presence of another individual who was the guilty party.

95.    Each of the Defendants separately and in concert acted outside the scope of their jurisdiction and without authorization of law and each of the Defendants, separately and in concert acted willfully, knowingly and purposefully with the specific intent to deprive Plaintiff of his right to freedom from illegal seizure of his person, freedom from illegal detention and imprisonment. All of these rights are secured to Plaintiff by the provisions of the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States, the Fourth Amendment, Eighth Amendment as well as the Equal Protection Clause of the Fourteenth Amendment and by 42 U.S.C. §1983.

96.    In arresting, detaining and interrogating Plaintiff, the Defendants and each of them knew or should have known they were violating laws of the State of New York and those statutory and constitutional rights set forth herein and have failed to prevent the same and therefore acted in concert to harm Plaintiff.

97.    As a direct and proximate result of the aforesaid acts of the Defendants and each of them, Plaintiff suffered great physical harm, mental anguish and violation of rights from then until now and he will continue to so suffer in the future having been greatly humiliated and mentally injured, as a result of the foregoing acts of the Defendants.

98.    Plaintiff was forced to incur great expense to the date of the filing of this Complaint for attorney's fees, investigation expenses, and other expenses in clearing his name against the unfounded and unwarranted allegations by the Defendants which have been a serious burden to Plaintiff.

99.    That by reason of the foregoing, Plaintiff has been placed in exposed to disgrace, public humiliation and embarrassment and has been damaged in the sum of Ten Million ($10,000,000.00) dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

17

## AS AND FOR COUNT TWO
## 42 U.S.C. §1983 MUNICIPAL LIABILITY

100.    The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 99 of this Complaint with the same force and effect as though fully set forth herein.

101.    Prior to January 8, 2003 and since, the CITY has permitted and tolerated a pattern and practice of unjustified, unreasonable and illegal abuses and arrests of persons by police officers of the CITY. Although same was improper, the officers involved were not seriously prosecuted, disciplined or subjected to restraint and such incidents were in fact covered up with official claims that the harassments were justified and proper. As a result, CITY police officers were caused and encouraged to believe that individuals could be falsely arrested, prosecuted and imprisoned under circumstances requiring the use of falsified evidence and testimony, and that such behavior would in fact be permitted by the CITY.

102.    In addition to permitting a pattern of practice of improper treatment of persons, the CITY has failed to maintain a proper system for investigation of all incidents of unjustified arrests, and prosecution by their agents/employees.

103.    The CITY has failed to respond to the continuing and urgent need to prevent, restrain and discipline police officers who deprive civil rights of it citizens.

104.    A system allegedly maintained by the CITY that has failed to properly review unjustified behavior and activities by police officers, and has failed to identify the violative acts by police officers and to subject officers to discipline, closer supervision or restraint to the extent that it has become the custom of the CITY to tolerate the improper and illegal arrests and other wrongful actions by police officers.

105.    Upon information and belief, specific systemic flaws in the CITY's police misconduct review process include but are not limited to the following:

    a.  Preparing reports regarding investigations of incidents as routine

18

point-by-point justification of the police officers' actions regardless of whether such actions are justified;

b. Police officers investigating incidents systematically fail to credit testimony by non-police officer witnesses and uncritically rely on reports by police officers involved in the incident;

c. Police officers investigating incidents fail to include in their reports relevant factual information which would tend to contradict the statements of the police officer involved;

d. Create and manufactured false testimony and evidence

106.   The foregoing acts, omissions, systemic flaws, policies and customs of the CITY cause police officers of the CITY to believe that improper actions would not be aggressively, honestly and properly investigated with the foreseeable result that officers are most likely to act inappropriately falsify evidence in situations where such evidence is neither necessary nor reasonable.

107.   As a direct and proximate result of the aforesaid acts, omissions, systemic flaws, policies and customs of the Defendant CITY, the other Defendants unjustifiably mistreated, illegally arrested and wrongfully detained the Plaintiff. All in violation of the Plaintiff's civil and constitutional rights and he has suffered and will continue to suffer from psychological harm, humiliation, fear, defamation of character and injury to reputation. All of these rights are secured to Plaintiff by the provisions of the Fourth Amendment and Sixth Amendments, the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States and by 42 U.S.C. §§1983 and 1985 and the laws of the State of New York.

108.   That by reason of the foregoing, Plaintiff has been exposed to disgrace, public humiliation and embarrassment and has been damaged in the sum of Ten Million ($10,000,000.00) dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages..

## AS AND FOR COUNT THREE
## STATE LAW FRAUDULENT MISREPRESENTATION

109.   The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 108 of this Complaint with the same force and effect as though fully set forth

herein.

110.    Defendants' accusations and allegations against Plaintiff were false, malicious, negligent, reckless, intentional and wrongful and were intended to cause Plaintiff injury and to persecute Plaintiff.

111.    Defendants, and each of them, expressly and impliedly, acted with each other to bring about Plaintiff's seizure, arrest, detention and false accusation, trial and imprisonment, all without lawful or proper basis or justification. All without consideration of Plaintiff's rights and in violation of all of Plaintiff's rights.

112.    Defendants HARTWELL, VARGAS and GONZALEZ were aware that the representations made to the Court and Jury were representations of fact that on January 8, 2003, Plaintiff was in possession of a Controlled Substance. Defendants HARTWELL, VARGAS and GONZALEZ knew said representations were false, and said representations were made with a reckless disregard to to their veracity. These representations made by Defendants induced the trial court to rely upon same, and wrongfully convict Plaintiff of criminal charges.

113.    That the false representations, false arrest, false imprisonment and violation of the laws of the State of New York and Plaintiff's civil rights were brought about and caused by the actions of Defendants and that the same were a clear and intentional abuse of process causing Plaintiff damages. All of these rights are secured to Plaintiff by the provisions of the New York State Constitution

114.    That by reason of the foregoing, Plaintiff has been placed in fear of his life, exposed to disgrace, public humiliation and embarrassment and has been damaged in the sum of Ten Million ($10,000,000.00) dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

## AS AND FOR COUNT FOUR
## STATE LAW ABUSE OF PROCESS/MALICIOUS PROSECUTION

115.    The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 114 of this Complaint with the same force and effect as though fully set forth

herein.

116.    The false detainment, wrongful arrest, malicious prosecution and other wrongful acts conducted against the Plaintiff by the Defendants CITY, HARTWELL, VARGAS, and GONZALEZ constituted unreasonable and excessive force by police officers and the district attorney, as well as abuse of process, abuse of authority, breach of police procedures, and violations of the Plaintiff's Fourth, Fifth, Eighth and Fourteenth Amendment rights. The Defendants CITY, NYPD, HARTWELL, VARGAS, and GONZALEZ negligently and recklessly breached their duty under 42 U.S.C. §1986 to prevent the commission of the civil rights violations perpetrated against ARMAND RETAMOZZO, including violations of 42 U.S.C. §§ 1983, 1985 and 1986 and substantive and procedural due process infractions.

117.    Said abuse of process was continued by the CITY, NYPD and CITY's refusal to adequately investigate and properly discipline the Defendants HARTWELL, VARGAS, and GONZALEZ for their actions against the Plaintiff ARMAND RETAMOZZO. Specifically, the CITY failed to investigate and verify the veracity of the Plaintiff's claims, despite the lack of any significant hearing or consideration by the District Attorney's office for the substantial evidence supporting ARMAND RETAMOZZO'S Complaint -- such evidence including eye-witnesses, consistent testimony, and the blatant lack of any probable cause for wrongly stopping, detaining and arresting, prosecuting and imprisoning ARMAND RETAMOZZO.

118.    The continued action taken by the Defendants CITY, NYPD, HARTWELL, VARGAS, and GONZALEZ to prosecute, persecute and fully inconvenience the Plaintiff ARMAND RETAMOZZO with false criminal charges is an abuse of process, in that using the courts and judicial process to persecute, intimidate, inconvenience and further damage the Plaintiff ARMAND RETAMOZZO, despite no significant evidence for prosecuting the baseless charges of Criminal Possession of a Controlled Substance in the second and third degrees.

21

119.    As a result of said abuse of process, Plaintiff has suffered continued emotional damage, including prolonged stress and anxiety, fear, and frustration, and has been harmed monetarily in his incurring of attorney fees, lost business opportunities, and other expenses incurred in the attempt to clear the Plaintiff ARMAND RETAMOZZO from these false and maliciously imposed criminal charges.

120.    By reason of the foregoing, Plaintiff has been damaged in the sum of Ten Million ($10,000,000.00) dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages..

## AS AND FOR COUNT FIVE
## STATE LAW FALSE ARREST

121.    The Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 120 of this Complaint with the same force and effect as though fully set forth herein.

122.    The Defendants CITY, NYPD, HARTWELL, VARGAS, and GONZALEZ lacked any probable cause to stop, hold and detain the Plaintiff ARMAND RETAMOZZO in custody for any period of time, no less the prolonged period of custody at 6th Precinct, Central Booking, and the Manhattan House of Detention, a/k/a, the Toombs.

123.    Without such probable cause, Defendants CITY, NYPD, VARGAS, and GONZALEZ wrongfully detained the Plaintiff ARMAND RETAMOZZO in the back of a police car, at the police precinct, at Central Booking, at the  and at the Manhattan House of Detention, denied Plaintiff his freedom for a period of approximately fourteen (14) days.  During said time, Plaintiff was physically prevented from leaving the custody of police, in that he was handcuffed and surrounded by officers in a police precinct, and kept there under the supervision and knowledge of the Police.

124.    As a result of said false arrest, Plaintiff suffered and continues to suffer pain, great

22

emotional and psychological harm, anxiety and personal fear, all due to the callous indifference of said

Defendants in falsely arresting ARMAND RETAMOZZO and requiring him to face false charges.

125.     By reason of the foregoing, Plaintiff has been damaged in the sum of Ten Million

($10,000,000.00) dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and

punitive damages.

## AS AND FOR COUNT SIX
## STATE LAW NEGLIGENCE

126.     The Plaintiff repeats, reiterates, and realleges each and every allegation contained in

paragraphs 1 through 125 of this Complaint with the same force and effect as though fully set forth

herein.

127.     The CITY, NYPD and Defendants HARTWELL, VARGAS, and GONZALEZ had a

duty under 42 U.S.C. §§ 1983, 1985 & 1986, as well as under the Fourth, Fifth, Eighth and Fourteenth

Amendments, and under New York State Law and their own rules and regulations, to prevent and cease

the wrongful detainment, false arrest, false imprisonment, malicious and false charging and prosecuting,

as well as a duty to hire, to train, to investigate, supervise and discipline Defendants HARTWELL,

VARGAS, and GONZALEZ and prevent other wrongful acts that were committed against Plaintiff

ARMAND RETAMOZZO.

128.     In actively inflicting and failing to prevent the above stated abuses incurred by

ARMAND RETAMOZZO, all of the Defendants acted unreasonably, recklessly, and negligently in

failing to exercise the slightest amount of due care to secure and protect the civil and constitutional

rights of the Plaintiff against illegal search and seizure, detained custody and arrest without Miranda

warnings, and other due process violations.  Said rights are guaranteed to the Plaintiff by 42 U.S.C. §

1983 and by the Fourth, Fifth, Eighth and Fourteenth Amendments of the Constitution.

23

129.    The breach of duty by CITY, NYPD, and Defendants HARTWELL, VARGAS, and GONZALEZ was a direct and proximate cause of the harm suffered by Plaintiff ARMAND RETAMOZZO.  Said harm includes physical harm, pain and suffering which continues to this day, monetary expenses in lost wages and legal costs, personal humiliation, damage to reputation and loss of standing in the community, and severe physical, emotional and psychological damage, resulting in the need to seek professional counseling for the trauma which he incurred.

130.    By reason of the foregoing, Plaintiff has been damaged in the sum of Ten Million ($10,000,000.00) dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

### AS AND FOR COUNT SEVEN
### STATE LAW INTENTIONAL INFLICTION OF EMOTION DISTRESS

131.    The Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 130 of this Complaint with the same force and effect as though fully set forth herein.

132.    The CITY, NYPD and Defendants HARTWELL, VARGAS, and GONZALEZ acted outrageously for their above-stated roles in the wrongful stop, detainment, false arrest, malicious prosecution, prolonged imprisonment, intimidation and public humiliation of the Plaintiff, ARMAND RETAMOZZO.

133.    Said emotional harm was exacerbated by the fabricated criminal charges against the Plaintiff, known by CITY and NYPD to be without basis, yet prosecuted, and denied Plaintiff of his freedom with the intention of causing extreme further harm and duress to the Plaintiff, ARMAND RETAMOZZO.

134.    The Defendants knew that their conduct would cause severe and extreme emotional harm

24

to Plaintiff.

135.    Said harm did in fact occur in this case, in that the Plaintiff was debilitated to the point where he still suffers from episodes of anxiety, anger, loss of sleep, and other factors; to the extent that the Plaintiff is in need of counseling by a psychiatrist or similar health care provider.

136.    By reason of the foregoing, Plaintiff has been damaged in the sum of Ten Million ($10,000,000.00) dollars.

**WHEREFORE,** Plaintiff demands judgment against Defendants:

(A)    As and for Count One in the sum of Ten Million ($10,000,000.00) dollars;

(B)    As and for Count Two in the sum of Ten Million ($10,000,000.00) dollars;

( C )    As and for Count Three in the sum of Ten Million ($10,000,000.00) dollars;

(D)    As and for Count Four in the sum of Ten Million ($10,000,000.00) dollars;

(E)    As and for Count Five in the sum of Ten Million ($10,000,000.00) dollars;

(F)    As and for Count Six in the sum of Ten Million ($10,000,000.00) dollars;

(G)    As and for Count Seven in the sum of Ten Million ($10,000,000.00) dollars;

(H)    Award such other and further relief as this Court may deem appropriate

**A JURY TRIAL IS HEREBY DEMANDED**

Dated:  Hempstead, New York
        February 16, 2007

                        LAW OFFICES OF
                        FREDERICK K. BREWINGTON

                        By: _____
                        FREDERICK K. BREWINGTON (FB5295)
                        *Attorneys for Plaintiff*
                        50 Clinton Street, Suite 501
                        Hempstead, New York 11550
                        (516) 489-6959

25

DOCKET NO.:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ARMAND RETAMOZZO,

Plaintiff

- against -

THE CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, ASSISTANT DISTRICT ATTORNEY
FREDERICK HARTWELL, in his official and individual
capacity, DETECTIVE JOSE VARGAS, in his official and
individual capacity, DETECTIVE EDWARD GONZALEZ,
in his official and individual capacity.

Defendants

------------------------------------------------------------X

SUMMONS AND COMPLAINT

------------------------------------------------------------X

LAW OFFICES OF
FREDERICK K. BREWINGTON
*Attorneys for Plaintiff*
50 Clinton Street, Suite 501
Hempstead, New York 11550
(516) 489-6959