COPY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

ARMAND RETAMOZZO,

                    Plaintiff

              - against -

THE CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, ASSISTANT DISTRICT ATTORNEY
FREDERICK HARTWELL, in his official and individual
capacity, ASSISTANT DISTRICT ATTORNEY JESSICA
MEDOFF in her official and individual capacity, DETECTIVE
JOSE VARGAS, in his official and individual capacity,
DETECTIVE EDWARD GONZALEZ, in his official
and individual capacity, and JOHN DOES 1-10, in their official
and individual capacity.

                    Defendants

--------------------------------------------------------------------X

**DOCKET NO.: CV-07-1248**
**(AKH)**

**AMENDED COMPLAINT**

**_JURY TRIAL DEMANDED_**

      **PLAINTIFF,** ARMAND RETAMOZZO, by and through his attorneys, THE LAW OFFICES

OF FREDERICK K. BREWINGTON, as and for his Amended Complaint as of right against the

Defendants, respectfully states and alleges, upon information and belief, as follows:

### PRELIMINARY STATEMENT

      1.      Prior hereto, Plaintiff filed a Complaint on February 16, 2007. This is the amendment

of that Complaint which is done as none of the Defendants in this action have filed a responsive pleading

as is contemplated by the Federal Rules of Civil Procedure. This is a civil action for monetary relief,

including past economic loss, compensatory damages, punitive damages, disbursements, costs and fees

brought under 42 U.S.C. §1983, grounded in rights secured by the Fourth, Fifth, Eighth and Fourteenth

Amendments to the United States Constitution, and other New York State causes of action. This is an

action against THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT,

ASSISTANT DISTRICT ATTORNEY FREDERICK HARTWELL, in his official and individual capacity, ASSISTANT DISTRICT ATTORNEY JESSICA MEDOFF, in her official and individual capacity, DETECTIVE JOSE VARGAS, in his official and individual capacity, DETECTIVE EDWARD GONZALEZ, in his official and individual capacity, JOHN DOES 1-10, in their official and individual capacity, for false arrest, false and unlawful imprisonment, unjust conviction, unjust imprisonment, malicious prosecution, abuse of process, intentional infliction of emotional harm, violation of civil rights and constitutional rights of ARMAND RETAMOZZO and failure to provide information, failure to disclose information, infliction of physical and emotional harm all caused by the negligent hiring and supervision, negligence, recklessness, intentional and careless action of the CITY OF NEW YORK, its agents and employees, the NEW YORK CITY POLICE DEPARTMENT, their agents and employees. All acts were committed under color of law, thus depriving Plaintiff of rights secured by the Constitution and laws of the United States and the State of New York

2.      Plaintiff, ARMAND RETAMOZZO, was falsely arrested, falsely charged, falsely jailed, falsely detained, deprived of his freedom, maliciously and falsely accused, abused, subjected to public ridicule, subjected to violence, subjected to undue pressure, defamed and made to suffer injury to his body and mind, injury to earning capacity, without reason, legal basis or justification by the CITY OF NEW YORK, its agent and employees, the NEW YORK CITY POLICE DEPARTMENT, all who knew or should have known, or became aware that there was not merit to the arrest, jailing, imprisonment, charging, prosecution, continuation of prosecution, conviction, institution and the continuance of said actions and that pursuit of same was illegal.

3.      The initial incident of the within matter arose on or about January 8, 2003 at about 4:55 p.m., at the corner of 18 Washington Square North, in New York City and State of New York.

4.      From on or about January 8, 2003 to May 5, 2006, Plaintiff ARMAND RETAMOZZO

2

was, falsely accused, falsely arrested, falsely held, falsely prosecuted, denied information, denied basic rights, subjected to wrongful and negligent actions by Defendants subjected to negligent use, holding, secreting of persons and records including information about witnesses, witness statements, exculpatory documents and information. He was denied his freedom despite the clear evidence showing that he should be freed, he was not afforded basic civil and constitutional protections, was not afforded reasonable bail, was falsely charged, was falsely and abusively prosecuted with the full complicity of the CITY OF NEW YORK, Police, Prosecutors and others. He was falsely charged and negligently held in violation of his civil rights by the above mentioned parties.

5.      Plaintiff, ARMAND RETAMOZZO, sustained severe damages, physical and emotional injuries, including, but not limited to, injury to his mental health, his good name, violation of civil rights, permanent damage to his body and his good name and reputation, loss of freedom, property damage, loss of access to personal property, loss of good standing in the community, loss of comfort, loss of employment, loss of income, loss of career opportunities, loss of support, humiliated, shamed, embarrassed, made to lose his freedom, extreme mental and emotional harm and stress, and impairment of earning power and other injuries not yet fully ascertained.

## JURISDICTION

6.  This action is brought pursuant to 42 U.S.C. §1983 and 1988 and the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343(3) and (4) and the aforementioned statutory and constitutional provisions. Plaintiff further invokes the pendent jurisdiction of this Court, pursuant to 28 U.S.C.A. § 1367, to hear and decide any and all claims arising under state law.

7.      Prior hereto and within the proper time allotted by statute Plaintiff filed a Notice of Claim, Claim No.: 2006PI001777, in compliance with General Municipal Law Section 50 et seq. and

CPLR 215, as against each municipal Defendant. More than 30 days have elapsed and Defendants have failed and refused to pay or adjust same.

8.      Plaintiff, ARMAND RETAMOZZO, was never requested to present himself to a hearing held by the Defendants pursuant to General Municipal Law §50-h, and therefore, Defendant CITY OF NEW YORK has waived its right to hold such a hearing.

9.      That all conditions precedent to instituting the lawsuit have been complied with in a timely manner.

10.     Venue herein is proper under 28 U.S.C. § 1391 (b); the cause of action arose in the Southern District of New York.

## PARTIES

11.     During all times relevant to this Complaint, the Plaintiff ARMAND RETAMOZZO, was and still is a citizen of the United States, residing in the County of Nassau, State of New York.

12.     During all times relevant to this Complaint, the Defendant THE CITY OF NEW YORK (hereinafter "CITY") is a duly constituted municipal corporation of the State of New York and is and was the employer of the named police personnel, and members of the District Attorneys Office.

13.     During all times relevant to this Complaint, the Defendant THE NEW YORK CITY POLICE DEPARTMENT (hereinafter "NYPD") was and is an agency of the CITY, with its headquarters located at 1 Police Plaza, New York, New York.

14.     Upon information and belief, during all times relevant to this Complaint, Defendant ASSISTANT DISTRICT ATTORNEY FREDERICK HARTWELL (hereinafter "HARTWELL") was and is a citizen and resident of the State of New York, and at all times herein mentioned was a Assistant District Attorney employed by the Office of the New York CITY District Attorneys Office, Office of Special Narcotics, with an office at 1 Hogan Place, New York, New York, and is being sued in his

4

official and individual capacities.

15.      Upon information and belief, during all times relevant to this Complaint, Defendant ASSISTANT DISTRICT ATTORNEY JESSICA MEDOFF (hereinafter "MEDOFF") was and is a citizen and resident of the State of New York, and at all times herein mentioned was a Assistant District Attorney employed by the Office of the New York CITY District Attorneys Office, Office of Special Narcotics, with an office at 1 Hogan Place, New York, New York, and is being sued in her official and individual capacities.

16.      Upon information and belief, during all times relevant to this Complaint,  Defendant DETECTIVE JOSE VARGAS (hereinafter "VARGAS") was and is a citizen and resident of the State of New York and at all times herein mentioned  was a Police Officer employed by the CITY, under the direction of Defendants NYPD and CITY,  with an office at 1 Police Plaza, New York, New York, and is being sued in his official and individual capacities. Upon information and belief, VARGAZ was acting in furtherance of the scope of his employment, acting under color or law, to wit under color of statues, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York

17.      Upon information and belief, during all times relevant to this Complaint, Defendant DETECTIVE EDWARD GONZALEZ (hereinafter "GONZALEZ') was and is a citizen and resident of the State of New York, and at all time herein mentioned was a Police Officer employed by the CITY, under the direction of Defendants NYPD and CITY,  with an office at 1 Police Plaza, New York, New York, and is being sued in his official and individual capacities. Upon information and belief GONZALEZ was acting in furtherance of the scope of his employment, acting under color or law, to wit under color of statues, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York.

5

18.    Upon information and belief, during all times relevant to this Complaint, Defendants JOHN DOES 1-10 (hereinafter "JOHN DOES') was/were citizen(s) and resident(s) of the State of New York, and at all time herein mentioned was a Police Officer employed by the CITY, under the direction of Defendants NYPD and CITY, with an office at 1 Police Plaza, New York, New York, and is being sued in his official and individual capacities. Upon information and belief, JOHN DOES was/were acting in furtherance of the scope of his/her employment, acting under color or law, to wit under color of statues, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York.

19.    During all times relevant to this Complaint the Defendants, and each of them, were acting under color of law, to wit, under color of constitution, statutes, ordinances, laws, rules, regulations, policies, customs and usages of the State of New York and/or the City of New York.

20.    During all times relevant to this Complaint the Defendants, and each of them, separately and in concert, engaged in acts or omissions which constituted deprivation of the constitutional rights, privileges and immunities of the Plaintiff, and while these acts were carried out under color of law, they had no justification or excuse in law and were instead gratuitous, illegal, improper and unrelated to any activity in which law enforcement officers may appropriately and legally engage in the course of protecting persons and property or ensuring civil order.

21.    During all times relevant to this Complaint, the Defendants, and each of them, had the power and the duty to restrain the other Defendants and prevent them from violating the law and the rights of the Plaintiff, but each of the Defendants failed and refused to perform that duty, failed and refused to restrain the other Defendants and thereby became a party to the unnecessary subjection of harm and denial of basic rights of the Plaintiffs.

6

## FACTUAL ALLEGATIONS

22.     Plaintiff, ARMAND RETAMOZZO, reiterates and realleges each and every allegation contained in paragraphs 1 through 20 of this Complaint with the same force and effect as though set forth herein.

23.     On or about January 8, 2003, Plaintiff, together with Bryant Shavuo, was arrested and charged under Docket No.: 2003NY002174, with violating Penal Law §220.18(6) Criminal Possession of a Controlled Substance in the second degree, a Class A-II felony; and violating Penal Law §220.16(1) Criminal Possession of a Controlled Substance in the third degree, a Class B felony. A conviction under Penal Law §220.18(6) carries with it a potential penalty of three (3) years to life imprisonment. Bail was set at $25,000.00

24.     Plaintiff remained in jail until January 21, 2003, at which time his father posted his bail.

25.     On or about March 19, 2003, Defendant MEDOFF superseded the accusatory instrument, and included the charge of violating Penal Law §220.50 Criminally Using Drug Paraphernalia in the second degree, an A misdemeanor.

26.     Through all these proceedings, Plaintiff never waivered in declaring his innocence and made that fact known to Defendants.

27.     On or about March 20, 2003, the Grand Jury rendered a True Bill finding, voting to indict Plaintiff with Criminal Possession of a Controlled Substance in the second, Criminal Possession of a Controlled Substance in the third degree, and Criminally Using Drug Paraphernalia in the second degree.

28.     On or about March 10, 2004, after a jury trial Plaintiff was convicted of the indicted charges of Criminal Possession of a Controlled Substance in the second and third degree, and acquitted of the indicted charge of Criminally Using Drug Paraphernalia in the second degree. Mr. Retamozzo was immediately remanded, and held in the New York House of Detention to await sentencing.

29.    On or about April 12, 2004, Plaintiff was sentenced to a term of three (3) years to life imprisonment on the charge of Criminal Possession of a Controlled Substance in the second degree, and a term of one (1) year to (3) three years.  These sentences were to run concurrently.

30.    Plaintiff appealed this conviction, and continued to exert his innocence.

31.    On or about October 18, 2005, the Appellate Division, First Department reversed Plaintiff's conviction on the law, and as a matter of discretion in the interest of justice, and remanded the matter for a new trial before another Justice..

32.    On or about November 18, 2005, Plaintiff was released on $10,000.00 bail pursuant to the Court's Order of reversal.

33.    On January 6, 2006, Plaintiff served a Notice of Claim upon Defendants POLICE and CITY.  Said Notice was served upon the Comptroller of New York City and Office of the Corporation Counsel for the City of New York.

34.    On or about May 5, 2006, Plaintiff was retried on the above remaining criminal charges, and acquitted by a jury.

35.    On or about August 2, 2006, Plaintiff served a Supplemental Notice of Claim adding Defendants DISTRICT ATTORNEY, VARGAS and GONZALEZ.  Said Notice was served upon the POLICE, Office of the Comptroller of New York City and Office of the Corporation Counsel for the City of New York, under Claim No.: 2006PI001777.

**THE ARREST**

36.    At the time of his arrest, Plaintiff ARMAND RETAMOZZO was a 23 year old second year student at Nassau Community College.  Plaintiff was employed part time and had no criminal record.

37.    While attending Nassau Community College, Plaintiff became acquainted with a young

8

student named Bryant Shavuo. Both youths shared similar class schedules and they became casual acquaintances, shooting pool and playing ping-pong at the college recreation center. Plaintiff had, in the past, given Shavuo rides in a white Maxima automobile owned by Plaintiff's father which Plaintiff frequently drove to and from school.

38.     On January 7, 2003 Mr. Shavuo asked Plaintiff to drive Shavuo into New York City and back to Freeport. Mr. Shavuo offered to give Plaintiff money to cover his costs. Plaintiff agreed to do so and together they drove into Manhattan on January 8, 2003.

39.     Upon arrival at Washington Square Park, Plaintiff parked the car and Mr. Shavuo exited, walking out of sight. Shortly thereafter, someone opened the passenger side door and Plaintiff saw a man he recognized as one of Mr. Shavuo's friends standing there. Mr. Retamozzo would later learn that this man was a confidential informant (CI) working for the Defendants NYPD.

40.     The CI opened the car door, propped his knees on the front passenger seat, and asked the whereabouts of Mr. Shavuo, to which Plaintiff responded that he did not know.

41.     The CI then asked Plaintiff if he wanted to buy any drugs. When Plaintiff said he wasn't interested, the CI lifted up his jacket/shirt and he exposed his chest, while laughing at Plaintiff stating that he was not wired. Plaintiff then saw a marked squad car come by, and saw what he believed to be a flash from a camera.

42.     Continuing with the conversation, the CI then asked if Plaintiff had any drugs on him, and when Plaintiff said he did not, the CI walked away accompanied by a Hispanic male who Plaintiff did not recognize.

43.     Shortly thereafter Mr. Shavuo returned, accompanied by the CI, and both men entered the car. Mr. Shavuo directed Plaintiff to drive in a westerly direction ending at Sixth Avenue. Approximately two (2) blocks from where they started, the CI received a call on his cellular phone;

9

someone was yelling at him. Upon receiving the phone call, the CI became visibly nervous and stated that he had to go back. Plaintiff took the CI back to the vicinity of 14 Washington Square Park, North. Upon their return to the park, Mr. Shavuo and the CI left the car, and Mr. Shavuo asked Mr. Retamozzo to wait for him.

44.    Shortly thereafter, the Hispanic male Plaintiff had seen earlier with the CI, walked over to Plaintiff's car and stood by the driver's door with his hand on his hips not saying anything to Plaintiff. While standing there, this individual was looking into Plaintiff's car window at the contents of his car.; suddenly, he walked away without saying anything toe Plaintiff.

45.    Immediately thereafter, At that point a marked police car pulled in front of Plaintiff's car, and a uniformed police officer who was not Detective Edward Gonzalez, stepped from the police car with his gun aimed at Plaintiff. The unknown Officer pulled Plaintiff from the car, threw him to the ground and handcuffed him. The Officer then searched Plaintiff finding about $150 on his person which he placed on the roof of the car together with some other currency. Plaintiff would later learn that the other currency- about $1,300.00- was found by other Police Officers in the locked glove compartment of the car; monies which Plaintiff's father intended to use to pay property taxes the following day.

46.    Plaintiff watched as approximately 10-15 other Police Officers searching the trunk and interior of his car. At the scene an unknown Police Officer falsely stated to Plaintiff at the scene that, "We found a pound of pot in your trunk". No drugs were found on Plaintiff or in his car.

47.    Plaintiff was placed in a squad car where Mr. Shavuo was already being held. A uniformed Police Officer told Plaintiff and Mr. Shavuo that everything was being tape recorded and warned them not to say anything. Plaintiff noticed through the window of the squad car that one of the Officers was driving away in Plaintiff's Nissan Maxima.

48.    Plaintiff and Mr. Shavuo were then taken to the 6th Precinct for arrest processing. While

there, Detective Gonzalez, told Plaintiff that the Nissan Maxima would not be impounded, and would be returned to Plaintiff's father, the owner of the car. A different story, however, was told to Plaintiff's father. Detective Gonzalez telephoned Plaintiff's father telling him that the car had been impounded and gave him a phoney voucher number along with the address of an impound lot in Queens. Upon information and belief, the Nissan Maxima was never impounded and no voucher for the car was given to either Plaintiff or his father until March 2004.

49.    Detective Gonzalez also promised Plaintiff's father that the $1,300.00 found in the glove compartment of the Maxima would soon be returned to Plaintiff's father, the owner of the currency. The money was not returned until several years later.

50.    On or about January 10, 2003, Plaintiff was arraigned on charges of Criminal Possession of a Controlled Substance in the second degree and Criminal Possession of a Controlled Substance in the third degree. Bail was set at $25,000.00 and a Grand Jury Notice was filed. Plaintiff remained incarcerated until 21 January 2003, at which time his father posted his bail.

51.    While out on bail, Plaintiff and his father found the Nissan Maxima in a parking lot of a McDonald's restaurant located in the Bronx near the Precinct where Detective Gonzalez worked. The four (4) month old car which was purchased new by Plaintiff's father, now had multiple scratches, dents, stains and certain mechanical problems. Finding the keys in the car which was unlocked, Plaintiff drove the car away while Plaintiff's father followed in a separate vehicle.

52.    Upon information and belief Detective Gonzalez was in possession of the Maxima at all times from it's seizure to its discovery by Plaintiff. At no time did Plaintiff or his father give Defendant Gonzalez permission to possess the automobile.

53.    Upon information and belief, on or about 19 March 2003, the criminal matter was submitted to the Grand Jury wherein Defendant MEDOFF elicited testimony that (1) Defendant

11

GONZALEZ found in the car with Plaintiff two digital weighing scales and "one book on how to make cocaine- to start a cocaine lab, and other book like a chemist's book" (grand jury 15); and (2) Defendant VARGAS heard Plaintiff make incriminating statements to him.

54.     Defendant MEDOFF knew or should have known that this testimony was false based on the DA Datasheet and documents prepared by Defendant GONZALEZ relating to the inventory search of the automobile.  Defendant MEDOFF not only allowed the testimony, but superseded the accusatory instrument, and included the charge of Criminally Using Drug Paraphernalia in the second degree (the digital scales) for the Grand Jury's consideration.

55.     Although Plaintiff sought to testify before the Grand Jury in his defense, he was denied the opportunity to do so.

56.     On or about March 20, 2003, the Grand Jury rendered a True Bill finding, voting to indict Plaintiff of the charges of Criminal Possession of a Controlled Substance in the second, Criminal Possession of a Controlled Substance in the third degree, and Criminally Using Drug Paraphernalia in the second degree. Mr. Shavuo was also indicted by the Grand Jury on these charges.

**THE TRIAL**

57.     Trial by jury in the underlying matter commenced on March 4. 2004.  Plaintiff was tried in Supreme Court, New York County, before the Honorable Edwin Torres for the crimes of Criminal Possession of a Controlled Substance in the second degree (Ecstasy pills), Criminal Possession of a Controlled Substance with intent to sell in the third degree (Ecstasy pills), and Criminal Use of Drug Paraphernalia in the second degree (a digital scale).

58.     Prior to Plaintiff's trial, on May 27, 2003, Mr. Shavuo accepted the District Attorney's offer, and plead guilty to the charge Criminal Possession of a Controlled Substance in the fifth degree, a class D felony. He was sentenced to two (2) to four (4) years in prison.

12

59.     Plaintiff rejected the District Attorney's offer of five (5) years probation and proceeded to trial.

60.     The essential question presented to the jury was simply whether Plaintiff possessed one thousand pills of MDMA ("Ecstasy") with the intent to sell them to an undercover police officer, Defendant Vargas, or whether Plaintiff was innocently present nearby when Bryant Shavuo possessed the pills.

61.     The prosecution conceded that at no time did Plaintiff physically possess the pills.

62.     At the time of trial, the Defendant HARTWELL failed to provide Plaintiff's counsel with *all Rosario* material, as required by law; in addition, no District Attorney Data Sheet was ever provided to Plaintiff's counsel.

63.     At trial, the Defendant HARTWELL's main witness against Plaintiff was Defendant VARGAS.

64.     Plaintiff testified that he had no knowledge that Mr. Shavuo used or possessed drugs, and at no time, nor in any way, did he participate in this crime; he was a mere bystander.

65.     Defendant VARGAS testified that he worked as an undercover police officer in plain clothes. Defendant VARGAS further testified that on January 8, 2003 he, along with several other Officers, attended a tactical plan meeting and decided that there was going to be a "rip" in the Village area, approximately around Washington Park. Defendant VARGAS further testified that according to the plan, the police intended to get 1,000 pills of Ecstasy (6) (MDMA), a mildly hallucinogenic drug which is popular for illegal recreational use.

66.     Defendant VARGAS testified that prior to January 8, 2003 or at this point, neither he nor the Police Officers had ever heard of Plaintiff or Bryant Shavuo.

67.     Defendant VARGAS testified that the CI who he met for the first time that day, had

13

already set up the phony drug transaction on behalf of the narcotics officers. According to VARGAS, most informants are or were criminal defendants themselves, who are in trouble or were in trouble. These individuals make deals with the Police Officers and/or Detectives to reduce pending charges or possible sentences for crimes which they have committed.

68.     Although requested, the identity of the CI was never disclosed to defense counsel or the Court.

69.     Defendant VARGAS testified that Detectives Suarez and Defendant GONZALEZ allegedly told VARGAS that they had an informant. Defendant GONZALEZ subsequently testified that the CI was not "his" informant, but was run by Detective Suarez; Detective Suarez did not testify at Plaintiff's trial. The CI did not testify at Plaintiff's trial.

70.     Defendant VARGAS testified that the CI was the one who set up the entire operation; that the CI provided information to the police that someone named "Mondo" wanted to sell 1,000 pills of Ecstasy for $7,000 in the Washington Square Park area on January 8, 2003; that the CI identified Plaintiff as "Mondo", introduced VARGAS to the purported sellers of the drugs, and guided the conversation between VARGAS and the sellers. Defendant VARGAS further testified that the only role of the narcotics officers was to seize the pills of Ecstasy and arrest the alleged would-be sellers.

71.     On January 8, 2003, Defendant VARGAS never spoke to or had any conversation with Plaintiff. Furthermore, Plaintiff does not, and has never gone by a nickname of "Mondo".

72.     At trial and under oath, members of the NYPD, including Defendants VARGAS and GONZALEZ, testified falsely, and fabricated the truth as to what occurred on the afternoon of January 8, 2003 as it pertained to Plaintiff.

73.     At trial, and under oath, Defendant VARGAS testified that he had conversations with Plaintiff, in the presence of the CI, regarding the alleged drug transaction. Defendant VARGAS

14

testified falsely that negotiations were entered into and then agreed to, for Plaintiff to sell drugs to him for the price of $7,500.00. Defendant VARGAS then falsely testified that he stated to Plaintiff ". . . I am going to the vehicle, and I'll retrieve the money because I don't want to carry that much money while I'm in the park walking around the city. . ."; that when Plaintiff drove away, and subsequently returned to the Park (see ¶42 infra) he inquired of Plaintiff " . . .did you get the pills . . . [Plaintiff] looks at [VARGAS] and is like yeah, we got them you got the money . . . I told him that I can't find my vehicle because the civilian had parked the vehicle and I wasn't familiar with the area . . ." At no time had Plaintiff ever spoken to Defendant VARGAS.

74.      Defendant VARGAS testified that at this point he notified Defendant GONZALEZ, and the arrest team moved in to effect the arrest.

75.      During the trial, Defendant VARGAS testified to the jury that on January 8, 2003, as an undercover officer, he was equipped with a beeper, two Nextel portable telephones, and – most importantly – a Kel transmitter/recorder, all of which had been checked just prior to the crime and were found to be operable. Yet the prosecution witnesses claimed that none of these electronic devices were used either to transmit or to record the alleged conversations between Plaintiff, the CI and Defendant VARGAS, because, according to Defendant VARGAS, the Kel units "never work".

76.      Although Defendant VARGAS was in possession of the audio recording device no tapes or records were ever produced as evidence. Although Defendant VARGAS testified that the recording devices "never work", no evidence as to whether the "Kel Transmitter/Recorder" was inoperable on January 8, 2003 was ever presented at trail.

77.      Only Defendant VARGAS claimed to have spoken with Plaintiff. No one else heard the conversations that Defendant VARGAS alleged took place between him and Plaintiff, and only Defendant VARGAS testified about the content of these alleged conversations. Defendant GONZALEZ

testified that he could not hear what, if anything, was said in the car. Detective Rosado testified that he could not hear what, if anything, was said in the car. None of the other police officers who participated in the "rip" testified about the alleged conversations.

78.    As part of his false testimony, Defendant VARGAS further testified that Mr. Shavuo got out of the car, and frisked Defendant VARGAS. Although Mr. Shavuo frisked him, he did not detect the audio recorder.

79.    Defendant VARGAS testified that Mr. Shavuo was 6'10" tall and weighed approximately 300 lbs.

80.    Defendant VARGAS further testified that Mr. Shavuo gestured to him that the drugs were in a white plastic bag hidden in the bushes in the park.

81.    Defendant VARGAS testified that neither Plaintiff or Mr. Shavuo had drugs in their possession.

82.    During his testimony before the Grand Jury, Defendant VARGAS falsely testified in sum and substance that: on January 8, 2003 at approximately 4:55 p.m., he met the Plaintiff, and Plaintiff was the driver in a white Maxima; that Plaintiff introduced himself as Mondo;  that at that time he also saw Bryant Shavuo in the vehicle; that he called Mr. Shavuo big man because he was 6'10" tall and weighed approximately 300 hundred pounds; that Plaintiff asked him if he had the money for the pills on me; that he told Plaintiff that the money was in my vehicle; that he wanted to see the product first; that he and Plaintiff kept going back and forth; that he told Plaintiff that he was robbed a couple of times and did not want to show Plaintiff the money; that he wanted to see the pills.

83.    During his testimony before the Grand Jury, Defendant VARGAS altogether failed to testify to the fact that the CI was involved in this crime, nor did he testify as to the CI's role in setting up and negotiating this crime, making it seem as if the only people involved were VARGAS, Plaintiff,

and Mr. Shavuo. In fact, Vargas told the grand jury that he was just dealing with Plaintiff and Shavuo *only*.

84.    During the trial, when confronted with this major discrepancy in his testimony, Defendant VARGAS testified in sum and substance that it was Defendant NYPD protocol/policy that if there is a confidential informant involved, during Grand Jury testimony, the officer is not to testify regarding the informants involvement in the criminal activity; that if they have to go to trial it is at that time that they reveal that there was an informant.

85.    Documents and materials pertaining to Defendant VARGAS'S testimony were prepared by VARGAS and various other members of Defendant NYPD, yet Defendant HARTWELL, the Assistant District Attorney who prosecuted Plaintiff, deliberately failed to disclose these documents and materials to Plaintiff. Said documents and materials such as the "DA Datasheet" were later found to contain allegations which flatly contradicted Detective Vargas's testimony.

86.    The evidence presented at trial was manufactured in conflict. Several property vouchers were prepared by Defendants NYPD. Upon information and belief, one voucher indicated that two (2) digital scales were found in the trunk of Plaintiff's car; one voucher indicated that no scales were found in the trunk of Plaintiff's car; and yet another property voucher indicated that one (1) scale was found in the trunk of Plaintiff's car; one (1) scale which was presented at trial *did not operate.*

87.    Defendant GONZALEZ falsely testified at trial that he found two (2) scales in the trunk of Plaintiff's car, even though only one (1) scale was presented into evidence at trial.

88.    Defendant GONZALEZ also testified that he retrieved from Plaintiff's trunk a Cocaine Handbook, and a book entitled *Como-se-dice.* Defendant GONZALEZ, who speaks fluent Spanish, falsely testified that this book was about drugs.

89.    Defendant GONZALEZ testified that neither he, nor the other undercover officeR with

17

him, heard any conversation between Plaintiff and Defendant VARGAZ or Plaintiff and the CI.

90.     As stated previously, Plaintiff was enrolled as a student at Nassau Community College enrolled in Criminal Justice courses, and the books found in the trunk of his car were textbooks which he used in the courses in which he was enrolled.  At no time did Plaintiff use these textbooks to learn about preparing illegal substances, as inferred  by Defendant GONZALEZ's false testimony.

91.     Plaintiff took the witness stand, and testified in defense of these false charges. Throughout, he maintained his innocence.

92.     However, during Plaintiff's direct testimony, and during cross-examination of the government's witnesses, presiding Judge Edwin Torres questioned Plaintiff, and interjected comments that had the effect of the Judge casting doubt on Plaintiff's credibility on one hand, and assisting the prosecutor's case on the other.  Many of Judge Torres' statements were testimonial in nature.  Upon information and belief, Judge Torres' questioning and statements made during the trial had the effect of swaying the jury in its determination of Plaintiff's guilt.

93.     As a result of the wrongful actions of the Defendants,  Plaintiff was found guilty of Criminal Possession of a Controlled Substance in the second degree, and Criminal Possession of a Controlled Substance in the third degree.

94.     On or about April 12, 2004, Plaintiff was sentenced to a term of three (3) years to life imprisonment.  Plaintiff continued to maintain his innocence.

**THE APPEAL**

95.     Plaintiff timely and fully appealed this conviction.

96.     On or about October 18, 2005, the Supreme Court of the State of New York, Appellate Division, First Department, Justice McGuire, reversed Plaintiff's conviction, and remanded the matter for a new trial before a new judge.

97.    The Court held that Plaintiff was denied a fair trial on the drug possession charges due to the trial court's questioning of Plaintiff during his direct testimony, and of government witnesses during cross examination.

98.    In its analysis of the criminal trial, and the trial Judge's numerous interventions and interruptions,  the Appellate Court stated that:

> [A]lthough both "ghost" officers testified, neither heard any of the conversations between [Plaintiff] and either the informant (who did not testify) or Vargas. And none of the People's witnesses testified that defendant physically possessed any of the bags of Ecstasy pills. Accordingly, the trial presented the jury with an overarching issue: the credibility of the testimony of Vargas and of [Plaintiff] . . . Vargas was the People's most important witness, because only he testified that [Plaintiff] negotiated the price of the Ecstasy pills with him and no witness testified that [Plaintiff] was in actual possession of the pills . . . "although [the] instances of judicial intervention during the People's direct case were improper, the trial judge's interventions during the presentation of the defense case were perhaps more egregious . . . At bottom, this was a case where the "credibility of a defendant-witness [was] a key issue," and the trial judge's conduct deprived defendant of his right to have the jury resolve that issue in a fair trial presided over by a fair and impartial judge.

*People v. Retamozzo*, 25 A.D. 3d 73, 802 N.Y.S. 2d., 426, 435 (1st Dept. 2005)

99.    Simply put, Mr. Retamozzo was denied a fair trial.

100.    Plaintiff received a new trial before the Honorable Roger Hayes, in Supreme Court of the State of New York, New York County.

**THE SECOND TRIAL**

101.    Plaintiff was retried on the charges of Criminal Possession of a Controlled Substance in the second and third degrees.

102.    Again, as in the first trial, Defendant VARGAS was offered as Defendant HARTWELL'S most important witness.

103.    During his direct examination, Defendant VARGAS' testimony was similar to that of the first trial.  However, on cross-examination, it was revealed that Defendant VARGAS' testimony at

19

the first trial was inconsistent with his testimony at the Grand Jury.  It was also revealed that the

information contained in the "buy report" which he claimed he prepared as a result of Plaintiff's arrest,

and on which he allegedly relied to testify,  was also inconsistent with his Grand Jury testimony.

104.    During cross-examination, Defendant VARGAS admitted, among other things, that his

sworn  testimony during the first trial regarding statements allegedly made by Plaintiff to him, did not

occur.  For example, Defendant VARGAS testified:

* That his buy report did not contain a statement of Plaintiff allegedly saying "I told you it was $7,500.00," and that he never told the Grand Jury that Plaintiff made this statement to him;

* That his buy report did not contain a statement of Plaintiff allegedly saying "my friend is in the park, is holding it", and that he never told the Grand Jury that Plaintiff made this statement to him;

* That his buy report did not contain a statement of Plaintiff allegedly saying "come around to the sidewalk", and that he never told the Grand Jury that Plaintiff made this statement to him;

* That Plaintiff never introduced himself to Defendant VARGAS, and that Plaintiff never told him his name, but that Defendant VARGAS testified before the Grand Jury that Plaintiff introduced himself to VARGAS and stated his name;

* That Plaintiff did not negotiate with Defendant VARGAS over the ecstasy pills;

* That Defendant VARGAS misidentified Plaintiff as the person who asked him to step up to the sidewalk;

* That Defendant VARGAS previously misidentified Mr. Shavuo;

* That Mr. Shavuo never negotiated with Defendant VARGAS over the ecstasy pills;

* That Defendant VARGAS did not call Shavuo "Big Man";

* That Defendant VARGAS testified before the grand jury as to issues he did not remember in the trial.

105.    Police witnesses called by the Prosecution testified that Defendant VARGAS was

equipped with a Kel transmitter during his alleged conversations with Plaintiff; that the purpose of the

Kel was to allow the field team Sergeant to hear what transpired between the Plaintiff and Defendant VARGAS; that the field team Sergeant received some transmittals from the Kel transmitter via a Kel recorder; that the Kel recorder was equipped to record the transmittals- or absence of transmittals - via a cassette tape; that the field team could hear what was being said over the Kel; and that the Kel tape should have been vouchered by Defendant GONZALEZ. Another police witness testified that in the past, the Kel recorder would often record transmissions successfully, and that Defendant NYPD could even enhance Kel tapes for clarity purposes. Despite this testimony, no Prosecution witness heard Plaintiff say anything to Defendant VARGAS. Moreover, Defendants NYPD and A.D.A. Hartwell ensured that no Kel tape was ever disclosed to Plaintiff.

106.    Upon information and belief, Defendants VARGAS' and GONZALEZ' testimonies contained wilful falsehoods and were grossly inconsistent with that given to the Grand Jury, and during the first trial.

107.    Defendant VARGAS testified that his contemporaneously made police reports- and also grand jury testimony- were missing key facts as a result of Defendant NYPD policy; that the remaining portions of his reports contained mistakes; and that Defendant NYPD refuses to disclose to him at least one of the reports.

108.    Detective GONZALEZ admitted that his sworn Complaint was inaccurate. For example, although Defendant GONZALEZ swore in his Complaint- and also testified at the first trial- that he observed Mr. Shavuo remove a bag containing ecstasy pills from Plaintiff's car. Defendant GONZALEZ admitted at the retrial that he never saw this occur. In addition the "ghost officer" Detective Peguero who was standing right next to Defendant GONZALEZ testified that he never saw this occur.

109.    On or about May 5, 2006, Plaintiff was found not guilty of the charges of Criminal Possession of a Controlled Substance in the second degree and Criminal Possession of a Controlled

Substance in the third degree.

110.    Plaintiff has never waivered in asserting his innocence.

111.    The actions of Defendant MEDOFF in charging Plaintiff with possessing digital weighing scales when she knew or should have known that Plaintiff did not possess the scales caused Plaintiff to suffer defamation of character, etc.

112.    The actions of Defendant MEDOFF in allowing Defendants VARGAS and GONZALEZ to give false testimony to the grand jury when she knew or should have known that the testimony was false caused Plaintiff to be wrongfully indicted, convicted and imprisoned.

113.    The actions of Defendant MEDOFF in proceeding with her prosecution of Plaintiff even though she knew or should have known that Plaintiff was innocent caused Plaintiff to be wrongfully convicted and imprisoned.

114.    The actions of Defendants HARTWELL, MEDOFF, VARGAS, GONZALEZ, and NYPD, in refusing to disclose to Plaintiff (1) the photographs, and video and audio tape recordings of the alleged criminal transaction; (2) the DAR prepared by Defendant VARGAS; (3) the DA Datasheet; and (4) the entire grand jury record caused Plaintiff to be wrongfully convicted and imprisoned.

115.    The actions of Defendant GONZALEZ in giving false testimony against Plaintiff that (1) he found $1,146.00 on Plaintiff's person; (2) he saw ecstasy pills in Plaintiff's car; (3) he found instructional books on chemistry, cocaine synthesis, and starting a cocaine laboratory; and (4) he found digital weighing scales in Plaintiff's car caused Plaintiff to be wrongfully convicted and imprisoned.

116.    The actions of Defendant VARGAS in giving false testimony against Plaintiff that Plaintiff together with Mr. Shavuo negotiated with VARGAS over ecstasy pills caused Plaintiff to be wrongfully convicted and imprisoned.

117.    The actions of Defendant GONZALEZ in unlawfully searching and seizing the car which

22

Plaintiff was driving caused Plaintiff to incur costs of locating, and repairing the car; caused Plaintiff to be unable to make bail in a timely manner; and caused Plaintiff to incur costs for alternate transportation.

118.    The actions of Defendant NYPD in instituting the policy in which employees are required to testify falsely before Grand Jurys caused Plaintiff to be wrongfully indicted, convicted and imprisoned.

119.    The actions of Defendants VARGAS, GONZALEZ and JOHN DOES 1-10 in arresting or participating in Plaintiff's arrest caused Plaintiff to suffer severe mental anguish, defamation of character, and to suffer loss of his constitutional rights.

120.    The actions of Defendants HARTWELL and MEDOFF in refusing to disclose the name of the CI who was in a position to testify favorable to Plaintiff caused Plaintiff to be wrongfully convicted and imprisoned.

## AS AND FOR COUNT ONE
### 42 U.S.C §1983 - FOURTH, FIFTH, EIGHTH and FOURTEENTH AMENDMENTS

121.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 120 of this Complaint with the same force and effect as though fully set forth herein.

122.    On January 8, 2003 Plaintiff was falsely arrested, falsely seized and falsely detained, deprived of his freedom, unlawfully imprisoned, maliciously prosecuted, and unjustly convicted, by Defendants in violation of the civil and constitutional rights of ARMAND RETAMOZZO. All acts by the Defendants were committed under color of law, thus depriving Plaintiff of rights secured by the Constitution and laws of the United States and the State of New York.

123.    On or about January 8, 2003, Defendants CITY, VARGAS and GONZALEZ, falsely

23

arrested, falsely seized and falsely detained Plaintiff, thus depriving him of his freedom. Said seizure was made without probable cause, as Defendants were of the knowledge that Plaintiff had committed no crime.

124.    Upon information and belief such seizure, arrest, and detention was ordered and directed by Defendants CITY, NYPD, Defendants VARGAS and GONZALEZ.

125.    The actions of Defendants VARGAS, GONZALEZ and JOHN DOES 1-10 in arresting or participating in Plaintiff's arrest caused Plaintiff to suffer severe mental anguish, defamation of character, and to suffer loss of his constitutional rights.

126.    Upon information and belief, Defendants HARTWELL and MEDOFF, possessed, but withheld information which would have exonerated Plaintiff of the criminal charges with which he was charged, in violation of Plaintiff's civil and Constitutional rights under the Federal and State Constitution.

127.    Upon information and belief, the Defendants and each of them took an active role in creating and manufacturing the charges against Plaintiff, solely for the purposes of effecting an arrest and conviction, and not to effectuate justice

128.    As part of the false arrest, detention and accusations, Defendants caused Plaintiff to be wrongfully seized, falsely arrested, tried, wrongfully convicted, falsely imprisoned, and deprived of his liberty,  without probable cause and be deprived of his liberty, and was further exposed to disgrace, public humiliation, injury and embarrassment.

129.    The Defendants individually and collectively knew at the time of Plaintiff's arrest and at all times since then that the evidence they had in connection with the charges brought against Plaintiff were false, inconsistent with and insufficient to establish his guilt and were based solely on their insistence that he was in the presence of another individual who was the guilty party.

24

130.    Each of the Defendants separately and in concert acted outside the scope of their jurisdiction and without authorization of law and each of the Defendants, separately and in concert acted willfully, knowingly and purposefully with the specific intent to deprive Plaintiff of his right to freedom from illegal seizure of his person, freedom from illegal detention and imprisonment. All of these rights are secured to Plaintiff by the provisions of the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States, the Fourth Amendment, Eighth Amendment as well as the Equal Protection Clause of the Fourteenth Amendment and by 42 U.S.C. §1983.

131.    In arresting, detaining and interrogating Plaintiff, the Defendants and each of them knew or should have known they were violating laws of the State of New York and those statutory and constitutional rights set forth herein and have failed to prevent the same and therefore acted in concert to harm Plaintiff.

132.    As a direct and proximate result of the aforesaid acts of the Defendants and each of them, Plaintiff suffered great physical harm, mental anguish and violation of rights from then until now and he will continue to so suffer in the future having been greatly humiliated and mentally injured, as a result of the foregoing acts of the Defendants.

133.    Plaintiff was forced to incur great expense to the date of the filing of this Complaint for attorney's fees, investigation expenses, and other expenses in clearing his name against the unfounded and unwarranted allegations by the Defendants which have been a serious burden to Plaintiff.

134.    That by reason of the foregoing, Plaintiff has been placed in exposed to disgrace, public humiliation and embarrassment and has been damaged in the sum of Ten Million ($10,000,000.00) dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

## AS AND FOR COUNT TWO
## 42 U.S.C. §1983 MUNICIPAL LIABILITY

135.    The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 134 of this Complaint with the same force and effect as though fully set forth herein.

136.    Prior to January 8, 2003 and since, the CITY has permitted and tolerated a pattern and practice of unjustified, unreasonable and illegal abuses and arrests of persons by police officers of the CITY. Although same was improper, the officers involved were not seriously prosecuted, disciplined or subjected to restraint and such incidents were in fact covered up with official claims that the harassments were justified and proper. As a result, CITY police officers were caused and encouraged to believe that individuals could be falsely arrested, prosecuted and imprisoned under circumstances requiring the use of falsified evidence and testimony, and that such behavior would in fact be permitted by the CITY.

137.    In addition to permitting a pattern of practice of improper treatment of persons, the CITY has failed to maintain a proper system for investigation of all incidents of unjustified arrests, and prosecution by their agents/employees.

138.    The CITY has failed to respond to the continuing and urgent need to prevent, restrain and discipline police officers who deprive civil rights of it citizens.

139.    A system allegedly maintained by the CITY that has failed to properly review unjustified behavior and activities by police officers, and has failed to identify the violative acts by police officers and to subject officers to discipline, closer supervision or restraint to the extent that it has become the custom of the CITY to tolerate the improper and illegal arrests and other wrongful actions by police officers.

140.    Upon information and belief, specific systemic flaws in the CITY's police misconduct review process include but are not limited to the following:

26

a. Preparing reports regarding investigations of incidents as routine point-by-point justification of the police officers' actions regardless of whether such actions are justified;

b. Police officers investigating incidents systematically fail to credit testimony by non-police officer witnesses and uncritically rely on reports by police officers involved in the incident;

c. Police officers investigating incidents fail to include in their reports relevant factual information which would tend to contradict the statements of the police officer involved;

d. Create and manufactured false testimony and evidence

141.    The foregoing acts, omissions, systemic flaws, policies and customs of the CITY cause police officers of the CITY to believe that improper actions would not be aggressively, honestly and properly investigated with the foreseeable result that officers are most likely to act inappropriately falsify evidence in situations where such evidence is neither necessary nor reasonable.

142.    As a direct and proximate result of the aforesaid acts, omissions, systemic flaws, policies and customs of the Defendant CITY, the other Defendants unjustifiably mistreated, illegally arrested and wrongfully detained the Plaintiff. All in violation of the Plaintiff's civil and constitutional rights and he has suffered and will continue to suffer from psychological harm, humiliation, fear, defamation of character and injury to reputation. All of these rights are secured to Plaintiff by the provisions of the Fourth Amendment and Sixth Amendments, the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States and by 42 U.S.C. §§1983 and 1985 and the laws of the State of New York.

143.    The actions of Defendant GONZALEZ in giving false testimony against Plaintiff that (1) he found $1,146.00 on Plaintiff's person; (2) he saw ecstasy pills in Plaintiff's car; (3) he found instructional books on chemistry, cocaine synthesis, and starting a cocaine laboratory; and (4) he found digital weighing scales in Plaintiff's car caused Plaintiff to be wrongfully convicted and imprisoned.

144.    The actions of Defendant VARGAS in giving false testimony against Plaintiff that Plaintiff together with Mr. Shavuo negotiated with VARGAS over ecstasy pills caused Plaintiff to be

wrongfully convicted and imprisoned.

145.    The actions of Defendant GONZALEZ in unlawfully searching and seizing the car which Plaintiff was driving caused Plaintiff to incur costs of locating, and repairing the car; caused Plaintiff to be unable to make bail in a timely manner; and caused Plaintiff to incur costs for alternate transportation.

146.    The actions of Defendant NYPD in instituting the policy in which employees are required to testify falsely before Grand Jurys caused Plaintiff to be wrongfully indicted, convicted and imprisoned.

147.    The actions of Defendants VARGAS, GONZALEZ and JOHN DOES 1-10 in arresting or participating in Plaintiff's arrest caused Plaintiff to suffer severe mental anguish, defamation of character, and to suffer loss of his constitutional rights.

148.    That by reason of the foregoing, Plaintiff has been exposed to disgrace, public humiliation and embarrassment and has been damaged in the sum of Ten Million ($10,000,000.00) dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages..

## AS AND FOR COUNT THREE
## STATE LAW FRAUDULENT MISREPRESENTATION

149.    The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 148 of this Complaint with the same force and effect as though fully set forth herein.

150.    Defendants' accusations and allegations against Plaintiff were false, malicious, negligent, reckless, intentional and wrongful and were intended to cause Plaintiff injury and to persecute Plaintiff.

151.    Defendants, and each of them, expressly and impliedly, acted with each other to bring about Plaintiff's seizure, arrest, detention and false accusation, trial and imprisonment, all without lawful or proper basis or justification.  All without consideration of Plaintiff's rights and in violation of all of Plaintiff's rights.

152.   The actions of Defendant VARGAS in giving false testimony against Plaintiff that Plaintiff together with Mr. Shavuo negotiated with VARGAS over ecstasy pills caused Plaintiff to be wrongfully convicted and imprisoned.

153.   Defendants HARTWELL, MEDOFF, VARGAS and GONZALEZ were aware that the representations made to the Grand Jury, Court and Jury were representations of fact that on January 8, 2003, Plaintiff was in possession of a Controlled Substance. Defendants HARTWELL, MEDOFF, VARGAS and GONZALEZ knew said representations were false, and said representations were made with a reckless disregard to to their veracity. These representations made by Defendants induced the trial court to rely upon same, and wrongfully convict Plaintiff of criminal charges.

154.   The actions of Defendant MEDOFF in charging Plaintiff with possessing digital weighing scales when she knew or should have known that Plaintiff did not possess the scales caused Plaintiff to suffer defamation of character.

155.   The actions of Defendant MEDOFF in allowing Defendants VARGAS and GONZALEZ to give false testimony to the grand jury when she knew or should have known that the testimony was false caused Plaintiff to be wrongfully indicted, convicted and imprisoned.

156.   The actions of Defendant MEDOFF in proceeding with her prosecution of Plaintiff even though she knew or should have known that Plaintiff was innocent caused Plaintiff to be wrongfully convicted and imprisoned.

157.   The actions of Defendant GONZALEZ in giving false testimony against Plaintiff that (1) he found $1,146.00 on Plaintiff's person; (2) he saw ecstasy pills in Plaintiff's car; (3) he found instructional books on chemistry, cocaine synthesis, and starting a cocaine laboratory; and (4) he found digital weighing scales in Plaintiff's car caused Plaintiff to be wrongfully convicted and imprisoned.

158.   That the false representations, false arrest, false imprisonment and violation of the laws

29

of the State of New York and Plaintiff's civil rights were brought about and caused by the actions of Defendants and that the same were a clear and intentional abuse of process causing Plaintiff damages. All of these rights are secured to Plaintiff by the provisions of the New York State Constitution

159.    That by reason of the foregoing, Plaintiff has been placed in fear of his life, exposed to disgrace, public humiliation and embarrassment and has been damaged in the sum of Ten Million ($10,000,000.00) dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

## AS AND FOR COUNT FOUR
## STATE LAW ABUSE OF PROCESS/MALICIOUS PROSECUTION

160.    The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 159 of this Complaint with the same force and effect as though fully set forth herein.

161.    The false detainment, wrongful arrest, malicious prosecution and other wrongful acts conducted against the Plaintiff by the Defendants CITY, HARTWELL, MEDOFF, VARGAS, and GONZALEZ constituted unreasonable and excessive force by police officers and the district attorneys, as well as abuse of process, abuse of authority, breach of police procedures, and violations of the Plaintiff's Fourth, Fifth, Eighth and Fourteenth Amendment rights. The Defendants CITY, NYPD, HARTWELL, MEDOFF, VARGAS, and GONZALEZ negligently and recklessly breached their duty under 42 U.S.C. §1986 to prevent the commission of the civil rights violations perpetrated against ARMAND RETAMOZZO, including violations of 42 U.S.C. §§ 1983, 1985 and 1986 and substantive and procedural due process infractions.

162.    Said abuse of process was continued by the CITY, NYPD and CITY's refusal to adequately investigate and properly discipline the Defendants HARTWELL, MEDOFF, VARGAS, and

GONZALEZ for their actions against the Plaintiff ARMAND RETAMOZZO. Specifically, the CITY failed to investigate and verify the veracity of the Plaintiff's claims, despite the lack of any significant hearing or consideration by the District Attorney's office for the substantial evidence supporting ARMAND RETAMOZZO'S Complaint -- such evidence including eye-witnesses, consistent testimony, and the blatant lack of any probable cause for wrongly stopping, detaining and arresting, prosecuting and imprisoning ARMAND RETAMOZZO.

163.    The actions of Defendant MEDOFF in allowing Defendants VARGAS and GONZALEZ to give false testimony to the grand jury when she knew or should have known that the testimony was false caused Plaintiff to be wrongfully indicted, convicted and imprisoned.

164.    The actions of Defendant MEDOFF in proceeding with her prosecution of Plaintiff even though she knew or should have known that Plaintiff was innocent caused Plaintiff to be wrongfully convicted and imprisoned.

165.    The actions of Defendants HARTWELL, MEDOFF, VARGAS, GONZALEZ, and NYPD, in refusing to disclose to Plaintiff (1) the photographs, and video and audio tape recordings of the alleged criminal transaction; (2) the DAR prepared by Defendant VARGAS; (3) the DA Datasheet; and (4) the entire grand jury record caused Plaintiff to be wrongfully convicted and imprisoned.

166.    The actions of Defendant GONZALEZ in giving false testimony against Plaintiff that (1) he found $1,146.00 on Plaintiff's person; (2) he saw ecstasy pills in Plaintiff's car; (3) he found instructional books on chemistry, cocaine synthesis, and starting a cocaine laboratory; and (4) he found digital weighing scales in Plaintiff's car caused Plaintiff to be wrongfully convicted and imprisoned

167.    The actions of Defendant VARGAS in giving false testimony against Plaintiff that Plaintiff together with Mr. Shavuo negotiated with VARGAS over ecstasy pills caused Plaintiff to be wrongfully convicted and imprisoned.

168.    The actions of Defendant NYPD in instituting the policy in which employees are required to testify falsely before Grand Jurys caused Plaintiff to be wrongfully indicted, convicted and imprisoned

169.    The continued action taken by the Defendants CITY, NYPD,  HARTWELL, MEDOFF, VARGAS, and GONZALEZ  to prosecute, persecute and fully inconvenience the Plaintiff ARMAND RETAMOZZO with false criminal charges is an abuse of process, in that using the courts and judicial process to persecute, intimidate, inconvenience and further damage the Plaintiff ARMAND RETAMOZZO, despite no significant evidence for prosecuting the baseless charges of Criminal Possession of a Controlled Substance in the second and third degrees.

170.    As a result of said abuse of process, Plaintiff has suffered continued emotional damage, including prolonged stress and anxiety, fear, and frustration, and has been harmed monetarily in his incurring of attorney fees, lost business opportunities, and other expenses incurred in the attempt to clear the Plaintiff ARMAND RETAMOZZO from these false and maliciously imposed criminal charges.

171.    By reason of the foregoing, Plaintiff has been damaged in the sum of Ten Million ($10,000,000.00) dollars,  including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages..

### AS AND FOR COUNT FIVE
### STATE LAW FALSE ARREST

172.    The Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 171  of this Complaint with the same force and effect as though fully set forth herein.

173.    The Defendants CITY, NYPD,  HARTWELL, MEDOFF, VARGAS, and GONZALEZ lacked any probable cause to stop, hold and detain the Plaintiff ARMAND RETAMOZZO in custody

for any period of time, no less the prolonged period of custody at 6th Precinct, Central Booking, and the Manhattan House of Detention, a/k/a, the Toombs.

174.    Without such probable cause, Defendants CITY, NYPD, VARGAS, and GONZALEZ wrongfully detained the Plaintiff ARMAND RETAMOZZO in the back of a police car, at the police precinct, at Central Booking, at the  and at the Manhattan House of Detention, denied Plaintiff his freedom for a period of approximately fourteen (14) days.  During said time, Plaintiff was physically prevented from leaving the custody of police, in that he was handcuffed and surrounded by officers in a police precinct, and kept there under the supervision and knowledge of the Police.

175.    The actions of Defendant GONZALEZ in unlawfully searching and seizing the car which Plaintiff was driving caused Plaintiff to incur costs of locating, and repairing the car; caused Plaintiff to be unable to make bail in a timely manner; and caused Plaintiff to incur costs for alternate transportation.

176.    The actions of Defendant NYPD in instituting the policy in which employees are required to testify falsely before Grand Jurys caused Plaintiff to be wrongfully indicted, convicted and imprisoned.

177.    The actions of Defendants VARGAS, GONZALEZ and JOHN DOES 1-10 in arresting or participating in Plaintiff's arrest caused Plaintiff to suffer severe mental anguish, defamation of character, and to suffer loss of his constitutional rights.

178.    As a result of said false arrest, Plaintiff suffered and continues to suffer pain, great emotional and psychological harm, anxiety and personal fear, all due to the callous indifference of said Defendants in falsely arresting ARMAND RETAMOZZO and requiring him to face false charges.

179.    By reason of the foregoing, Plaintiff has been damaged in the sum of Ten Million ($10,000,000.00) dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and

punitive damages.

## AS AND FOR COUNT SIX
## STATE LAW NEGLIGENCE

180.    The Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 179 of this Complaint with the same force and effect as though fully set forth herein.

181.    The CITY, NYPD and Defendants HARTWELL, MEDOFF, VARGAS, and GONZALEZ had a duty under 42 U.S.C. §§1983, 1985 and 1986, as well as under the Fourth, Fifth, Eighth and Fourteenth Amendments, and under New York State Law and their own rules and regulations, to prevent and cease the wrongful detainment, false arrest, false imprisonment, malicious and false charging and prosecuting, as well as a duty to hire, to train, to investigate, supervise and discipline Defendants HARTWELL, MEDOFF, VARGAS, and GONZALEZ and prevent other wrongful acts that were committed against Plaintiff ARMAND RETAMOZZO.

182.    In actively inflicting and failing to prevent the above stated abuses incurred by ARMAND RETAMOZZO, all of the Defendants acted unreasonably, recklessly, and negligently in failing to exercise the slightest amount of due care to secure and protect the civil and constitutional rights of the Plaintiff against illegal search and seizure, detained custody and arrest without Miranda warnings, and other due process violations.  Said rights are guaranteed to the Plaintiff by 42 U.S.C. § 1983 and by the Fourth, Fifth, Eighth and Fourteenth Amendments of the Constitution.

183.    The breach of duty by CITY, NYPD, and Defendants HARTWELL, MEDOFF, VARGAS, and GONZALEZ was a direct and proximate cause of the harm suffered by Plaintiff ARMAND RETAMOZZO.  Said harm includes physical harm, pain and suffering which continues to this day, monetary expenses in lost wages and legal costs, personal humiliation, damage to reputation

34

and loss of standing in the community, and severe physical, emotional and psychological damage, resulting in the need to seek professional counseling for the trauma which he incurred.

184.    By reason of the foregoing, Plaintiff has been damaged in the sum of Ten Million ($10,000,000.00) dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

## AS AND FOR COUNT SEVEN
## STATE LAW INTENTIONAL INFLICTION OF EMOTION DISTRESS

185.    The Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 184 of this Complaint with the same force and effect as though fully set forth herein.

186.    The CITY, NYPD and Defendants HARTWELL, MEDOFF, VARGAS, and GONZALEZ acted outrageously for their above-stated roles in the wrongful stop, detainment, false arrest, malicious prosecution, prolonged imprisonment, intimidation and public humiliation of the Plaintiff, ARMAND RETAMOZZO.

187.    Said emotional harm was exacerbated by the fabricated criminal charges against the Plaintiff, known by CITY and NYPD to be without basis, yet prosecuted, and denied Plaintiff of his freedom with the intention of causing extreme further harm and duress to the Plaintiff, ARMAND RETAMOZZO.

188.    The Defendants knew that their conduct would cause severe and extreme emotional harm to Plaintiff.

189.    Said harm did in fact occur in this case, in that the Plaintiff was debilitated to the point where he still suffers from episodes of anxiety, anger, loss of sleep, and other factors; to the extent that the Plaintiff is in need of counseling by a psychiatrist or similar health care provider.

35

190.    By reason of the foregoing, Plaintiff has been damaged in the sum of Ten Million ($10,000,000.00) dollars.

**WHEREFORE,** Plaintiff demands judgment against Defendants:

(A)    As and for Count One in the sum of Ten Million ($10,000,000.00) dollars;

(B)    As and for Count Two in the sum of Ten Million ($10,000,000.00) dollars;

( C )    As and for Count Three in the sum of Ten Million ($10,000,000.00) dollars;

(D)    As and for Count Four in the sum of Ten Million ($10,000,000.00) dollars;

(E)    As and for Count Five in the sum of Ten Million ($10,000,000.00) dollars;

(F)    As and for Count Six in the sum of Ten Million ($10,000,000.00) dollars;

(G)    As and for Count Seven in the sum of Ten Million ($10,000,000.00) dollars;

(H)    Award such other and further relief as this Court may deem appropriate

<u>**A JURY TRIAL IS HEREBY DEMANDED**</u>

Dated: Hempstead, New York
       May 25, 2007

LAW OFFICES OF
FREDERICK K. BREWINGTON

By: _____
FREDERICK K. BREWINGTON (FB5205)
*Attorneys for Plaintiff*
50 Clinton Street, Suite 501
Hempstead, New York 11550
(516) 489-6959

36

DOCKET NO.: CV-07-1248 (AKH)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

ARMAND RETAMOZZO,

Plaintiff

- against -

THE CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, ASSISTANT DISTRICT ATTORNEY
FREDERICK HARTWELL, in his official and individual
capacity, ASSISTANT DISTRICT ATTORNEY JESSICA
MEDOFF in her official and individual capacity, DETECTIVE
JOSE VARGAS, in his official and individual capacity,
DETECTIVE EDWARD GONZALEZ, in his official
and individual capacity, and JOHN DOES 1-10, in their official
and individual capacity.

Defendants

--------------------------------------------------------------X

AMENDED SUMMONS AND
AMENDED COMPLAINT

--------------------------------------------------------------X

LAW OFFICES OF
FREDERICK K. BREWINGTON
*Attorneys for Plaintiff*
50 Clinton St., Ste 501
Hempstead, New York 11550
516-489-6959